## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| CYNTHIA F. STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-01377-JEO |
| | ) | |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Cynthia Stephens brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 16). *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed her current DIB application in December 2012, alleging she became disabled beginning June 13, 2012. (R. 11, 143). It was initially denied. An administrative law judge ("ALJ") held a hearing on August 6, 2014 (R. 29) and issued an unfavorable decision on January 30, 2015 (R. 8-24). The Appeals Council ("AC") denied Plaintiff's request for review. (R. 1-6).

# II. FACTS

Plaintiff was 52 years old at the time of the ALJ's decision. (R. 22, 143). She has a limited education, having completed the eleventh grade, and has worked in the past as a laborer. (R. 22, 51, 188). Plaintiff alleged onset of disability on June 13, 2012, due to various medical conditions and surgeries. (R. 187).

Following a hearing, the ALJ found that Plaintiff had the following medically determinable impairments: a history of an anterior cruciate ligament ("ACL") tear, a medial collateral ligament ("MCL") tear, a right knee MCL tear, and a posterior cruciate ligament ("PCL") tear; status post debridement of a partial labra tear acromial decompression; degenerative disc disease; obesity; hypertension; and loss of vision in the right eye. (R. 13). He also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P,

app. 1.  (R. 18).  He further found Plaintiff retained the residual functional

capacity ("RFC") to perform light work, but she: (1) could not operate foot or leg

controls, or push or pull with the lower extremities; (2) could never crawl, lift

overhead, or reach overhead; (3) could only occasionally reach in all other

directions and climb, balance, stoop, kneel, and crouch; (4) could not perform any

jobs requiring bilateral vision or depth perception; (5) should avoid any exposure

to unprotected heights or hazardous machinery; and (6) should avoid concentrated

exposure to extreme heat or cold, wetness, humidity, or vibrations.  (R. 18).  The

ALJ then found Plaintiff could not perform any past relevant work but, based on

testimony from a vocational expert ("VE"), could perform other work that existed

in significant numbers in the national economy.  (R. 22-23, 52-53).  Accordingly,

the ALJ found Plaintiff was not disabled.  (R. 23).

### III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly

circumscribed.  The function of the court is to determine whether the

Commissioner's decision is supported by substantial evidence and whether proper

legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The court must "scrutinize the record as a whole to determine if the decision

reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20 C.F.R. § 404.1520(a)(4)). The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## V. DISCUSSION

Plaintiff argues the ALJ did not properly consider her subjective complaints

---

[2]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

of significant neck and arm pain and her allegations of significant limitations in walking and standing in assessing her RFC. (Doc. 11 at 2, 6-8). She also argues that the ALJ "appears to have rejected the testimony and medical evidence of numerous other care providers ... and discounted the testimony of the vocational expert." (*Id*. at 2). The Commissioner responds that substantial evidence supports the ALJ's decision and Plaintiff's arguments are "unavailing." (Doc. 15 at 4-6).

As noted in the previous section, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(d)(1)(A), (d)(5); *Moore*, 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Plaintiff has the burden to provide relevant medical and other evidence she believes will prove her alleged disability resulting from her physical or mental impairments. *See* 20 C.F.R. §§ 404.1512(a)-(b), 404.1516. In analyzing the evidence, the focus is on how an impairment affects a claimant's ability to work, and not on the impairment itself. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

In addressing a claimant's subjective description of pain and symptoms, the

law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

*Wilson*, 284 F.3d at 1225; *see also* 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§ 404.1529, 416.929.

When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all the evidence – objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, measures a claimant takes to relieve symptoms, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are

obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

## A.    Failure to Consider the Medical Evidence

Plaintiff argues "the ALJ's decision was based expressly or implicitly only [on] the ALJ's lay judgment [and] not the medical facts." (Doc. 11 at 6). In assessing Plaintiff's argument, it is helpful to start with areas of agreement. The ALJ expressly found that Plaintiff stated she could not work because of problems in her knees, shoulders, back, and neck, and could walk for only twenty-five to thirty minutes at a time and could stand for only two to three hours at a time. (R. 19, 43, 49). He also acknowledged Plaintiff underwent surgeries on her neck, knee, and right shoulder and took pain medication. (R. 19). He also recognized that she suffers from carpal tunnel syndrome and degenerative disc disease and is blind in her right eye. (R. 19-21). Where the parties part ways is the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not fully supported by the record." (R. 19).

As noted above, this court's role is limited in conducting its review. In

assessing the record, the court must evaluate the medical evidence, as well as other evidence, including Plaintiff's testimony at the hearing, her reported daily activities, and the observations and opinions of her treating and examining doctors.

The court will begin by examining the evidence concerning her neck. Plaintiff had neck surgeries in the late 1990s or early 2000s. (R. 45). While she testified at her hearing that she still had problems with her neck, she provided no specifics whatsoever. (R. 44). Medical records from Dr. James G. White from 2009 state that Plaintiff was reporting back and bilateral back pain. (R. 641). Dr. White's impression was that she was suffering from spinal canal stenosis. (*Id*.) He planned to do a lumbar epidural steroid injection at Plaintiff's request. (R. 640). April 2013 notes from Dr. Ken Hager, an interpreting radiologist, show that Plaintiff had "postoperative changes with anterior plate and intervertebral spacer device at the C3 and C4 levels and degenerative joint disease at 4/5 and fusions of the C5, C6, and C7 elements. She had mildly suboptimal dentition and no acute abnormalities identified." (R. 16, 593).

Subsequent to her neck surgeries, Plaintiff was injured on June 13, 2012, when she was attacked by a bull while working in a stockyard. (R. 19). Plaintiff injured her right knee in the accident.

> An MRI of her knee showed the narrowing of joint spaces and
> contusions of the lateral femoral condyle and lateral tibial plateau.
> She had complete tears of the anterior and posterior cruciate
> ligaments. She had mild degenerative change of the menisci and
> moderate size of the suprapatellar joint effusion. She was noted to
> have tears of the ACL, PCL, and MCL. Surgery was recommended.

(R. 14). Plaintiff had surgery on July 23, 2012. By August 2012, she showed

improved strength, range of motion, and extension in her knee as a result of the

surgery and physical therapy. (R. 14, 20, 375-77, 411-30). By September 2012,

Plaintiff was already "full weight bearing," did not need an assistive device, and

had intact motor and sensory findings. (R. 382). Plaintiff was discharged from

physical therapy in October 2012 for noncompliance after failing to show up for

any visits after August 15. (R. 410). On October 5, 2012, Plaintiff was seen for a

follow-up regarding her right arthroscopy with ACL reconstruction. She was

described as improving and having an acceptable range of motion. Her motor and

sensory exams were grossly intact without deficits. According to her progress

notes, Plaintiff was scheduled to return to work that month. (R. 380-81).

In November 2012, Plaintiff underwent a debridement of partial labral tear

and subacromial decompression with excision of spurs of the acromioclavicular

joint for her right shoulder. (R. 406-07). In her first follow-up visit with her

surgeon, Dr. Joseph Kendra, in December 2012, Plaintiff reported she was doing

well and had forward flexion and abduction at 100 to 120 degrees. (R. 465).

Plaintiff reported soreness at her next follow-up visit in mid-December, but her shoulder appeared normal upon examination and in an x-ray. (R. 464). Although Plaintiff continued to report shoulder pain at the end of December, by January 2013 she reported she was "doing OK," though her shoulder still bothered her when moving her arm down from an elevated position, and she had full active shoulder range of motion. (R. 462-63). Dr. Kendra noted that Plaintiff was not doing a lot of her required strengthening exercises. (R. 462).

Plaintiff's more recent treatment and exam records fail to show findings or treatment consistent with the severe limitations she alleged due to pain. Plaintiff's visits to Dr. Madadi Reddy from December 2012 through April 2013 generally reflect unremarkable extremity findings upon examination. (R. 573, 576, 579, 582, 585, 588). An April 2013 x-ray of Plaintiff's cervical spine showed some postoperative changes and mildly suboptimal dentition but no acute abnormalities. A right knee x-ray showed only minor degenerative joint disease and a healed ACL replacement. (R. 593-94).

Notes from Plaintiff's April 2013 visit to Dr. Michael Cantrell at The Orthopaedic Center also show Plaintiff complained of "persistent instability, weakness, and pain in her right knee." (R. 592, 639). Dr. Cantrell noted that she had intact coordination and balance and "no particular tenderness." (*Id*.) He

recommended continued work restrictions and that she undergo an FCE

(Functional Capacity Evaluation). (*Id*.) Plaintiff underwent an FCE on her knee

on May 7, 2013. It was of limited use, however, because Plaintiff's "effort was

not consistent and she failed to maintain control of pain and symptoms." (R. 628).

Dr. Cantrell opined that Plaintiff

> has specific measured restrictions, which likely represent an[]
> underrepresentation of her current capabilities. She had a validity
> criteria which suggested very poor effort or voluntary submaximal
> effort, not necessarily related to pain, impairment, or disability. Thus,
> my ability to accurately determine her restrictions is limited....

(R. 613). He concluded that she had no restrictions.[3] (*Id*.) He did recommend

that Plaintiff avoid unpredictable footing and uneven ground. (*Id*.) Finally, he

noted that "any lifting restrictions she had would be due to her general overall

conditioning and/or strength." (*Id*.)

On September 30, 2013, Plaintiff underwent an FCE and an impairment

rating examination concerning her right shoulder. (R. 616-38). She also

underwent an impairment rating exam on October 10, 2013. (R. 608-12). The

following observations are derived from those examinations: Plaintiff's gait was

normal, non-antalgic; she had a normal cervical range of motion in all directions;

---

[3]The record is somewhat confusing regarding this opinion. The ALJ and Plaintiff's counsel attribute this opinion to Dr. Reddy (*see e.g.*, R. 20, 22; Doc. 11 at 6-7). However, it is Dr. Cantrell who rendered the opinion. (R. 613).

her spine was non-tender and her paraspinal muscles were normal in tone; she had normal range of motion in her thoracic spine; she had a normal range of motion in her lumbar spine; her hips were nontender; her right shoulder revealed some tenderness; and her grip strength was questionable. (R.608-10). The impression from the impairment rating testing was status post subacromial decompression and labral debridement and history of a reported job related event. Plaintiff was assessed to have an 11% right upper extremity impairment and a total person impairment of 7%. It was believed that she could frequently reach forward with her left and right arm, frequently reach overhead with the left arm, and occasionally lift overhead with the right arm. (R. 16, 611). The examiner concluded, however, that Plaintiff "exhibited symptom/disability exaggeration behavior ... , which suggests very poor effort or voluntary submaximal effort which is not necessarily related to pain, impairment or disability." (R. 616; *see also* R. 611 (Dr. Brian R. Carter) and R. 637 (David Hinger, M.S.)).

Dr. Cantrell saw Plaintiff again on February 25, 2014. She reported pain in her knee. Upon examination, Dr. Cantrell found that she did "not give good effort with her active motions." (R. 607). He also noted no swelling. (*Id*.) They discussed treatment options, including that further surgery would likely not help her. Dr. Cantrell then told her that a knee arthroplasty might be possible in the

future.  He then

> asked about whether or not she is working at this point and she
> became quite upset. [He] discussed with her [his] concerns with
> regard to her poor effort on her FCE and that would be concerning to
> [him] that she might not give appropriate effort after a knee
> arthroplasty.  At that point, she decided to end the visit.

(*Id*.)

Consultative examiner Dr. Sathyan Iyer examined Plaintiff in April 2013.

He determined Plaintiff had slightly decreased 4/5 right lower extremity strength

but no significant extremity abnormalities, with full range of motion in both knees,

and no swelling or deformity was noted.  (R. 20, 470-71, 473).  Regarding her

upper extremity functioning, Dr. Iyer found Plaintiff could not place her right hand

behind her head or lower back, but had abduction and anterior elevation to 80

degrees and full abduction and rotation in her right shoulder, full range of motion

in her left upper extremity joints, and normal grip strength and upper extremity

muscle power.  (R. 471, 474).  Dr. Iyer opined Plaintiff would have some

functional limitations in standing, walking, climbing, squatting, overhead,

pushing, and pulling.  (R. 472).  The ALJ gave great weight to these findings and

opinion and noted his RFC finding was consistent with Dr. Iyer's findings and

opinion.  (R. 22).

The court finds that the medical evidence does not support Plaintiff's

complaints of disabling limitations due to pain.  Plaintiff has not demonstrated that the medical evidence fails to support the determination of the ALJ.

## B.    Plaintiff's Daily Activities

Plaintiff stated in her Function Report that she has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs.  (R. 198-203).  She described her condition as "pain in knee and shoulder almost always constant[.]  Sometimes very painful to where I have to go to emergency room."  (R. 201).  She also stated that she could walk only "20 feet or so" before she needed to stop and rest.  (*Id*.)  Plaintiff did state that she takes her granddaughter to school twice a week and she "helps feed [and] water [her] horses and dogs."  (R. 197).  Plaintiff also stated that she prepares simple meals a couple of times a week, does her laundry, cleans her room, and goes to the store twice a month.  (R. 198-99).  At her administrative hearing, she testified that she could not work because of problems with her knees, shoulder, and back.  (R. 43).  She also testified that she could not walk for more than 25 or 30 minutes and she could not stand for more than two to three hours.  (R. 49).

The ALJ found that Plaintiff's activities did not support the disabling limitations Plaintiff alleged.  (R. 21).  Plaintiff argues that the ALJ's determination is not supported by the medical facts and that the objective medical evidence

supports her claim of total disability. (Doc. 11 at 6-8; Doc. 6). Plaintiff also argues that the ALJ mischaracterizes her testimony. (Doc. 17 at 10-11).

Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529 (c)(3)(i); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Plaintiff argues that the ALJ did not properly consider her subjective complaints of significant neck, knee and arm pain and her statements concerning her limitations in walking and standing. (Doc. 11 at 2, 6-8; Doc. 15 at 4).

The ALJ considered the objective medical evidence of record, including Plaintiff's surgeries and medications, Plaintiff's daily activities, and the other evidence in assessing Plaintiff's subjective complaints of disabling limitations due to pain. (R. 20-22). He discussed Plaintiff's medical history including her surgeries, but also noted Plaintiff's medical records show improvement in her physical functioning in the months following her knee and shoulder surgeries. (R. 20-22; *see also* R. 375-77, 382, 410-30, 462-65). Plaintiff's more recent treatment and exam records show largely normal findings, including unremarkable extremity findings, normal range of motion in the spine and extremity joints, other than a reduced right shoulder range of motion, and nearly full strength in all extremities

(R. 20-21, 470-74, 573, 576, 579, 582, 585, 588, 609-10, 639).  Plaintiff's cervical spine, shoulder, and knee x-rays post-surgery also showed no acute abnormalities and only mild or minor changes.  (R. 20-21, 464, 593-94).  Plaintiff has not sufficiently challenged these medical findings to demonstrate that the ALJ's decision is not based on substantial evidence.

Additionally, Plaintiff's medical providers observed that she showed poor effort in her functional capacity evaluations.  This is significant in that it undercuts her credibility.

Still further, Plaintiff's reported daily activities are somewhat inconsistent with disabling musculoskeletal pain.  As noted above, Plaintiff stated she takes her granddaughter to school twice a week and "helps feed [and] water [her] horses and dogs."  (R. 197).  Plaintiff also stated that she prepares simple meals a couple of times a week, does her laundry, cleans her room, and goes to the store twice a month.  (R. 198-99).  These activities are consistent with the ALJ's determination that Plaintiff was not suffering from disabling limitations due to pain.  Plaintiff's counsel points out that her ability to babysit, feed the animals,  and do household chores "does not equate to the ability to be gainfully employed and work an eight hour day."  (Doc. 17 at 6).  The court agrees that Plaintiff's ability to do these things is not the end-all in the consideration.  *See Fair v. Brown*, 885 F.2d 597,

6032 (9th Cir. 1989) (noting "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (noting "the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting.").  They are, however, things that should be considered by an ALJ and this court.  *See* Social Security Ruling (SSR) 96-7p,

1996 WL 374186 (S.S.A.)[4]; SSR 16-3p, 2016 WL 1119029 (S.S.A.).[5]  The court

finds that this evidence supports the ALJ's determination.[6]

### C.    Testimony of the VE

To the extent Plaintiff argues that the ALJ "totally ignored" the testimony

from the VE, the court finds otherwise.  (Doc. 17 at 6; *see also* Doc. 11 at 7-8).

Plaintiff states that the VE testified that if the ALJ found Plaintiff's subjective

testimony to be credible, there would not be any jobs Plaintiff could perform.

---

[4]The regulation provides, in part, as follows:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 314686, * 1.

[5]SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016.  *See* SSR 16-3P, 2016 WL 1119029, at *1; SSR 16-3P, 2016 WL 1237954, at *1 (correcting the effective date).  SSR 16-3p applies only prospectively. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017).  As the ALJ's decision was issued in January 2015, the court is applying SSR 96-7p.

[6]Plaintiff also argues that the ALJ "mischaracterize[s] Plaintiff's testimony."  (Doc. 17 at 9).  Specifically, she states that while she did testify that she did engage in household chores and, at times, looked after her granddaughter, she "made it clear that she received assistance when she needed it and these activities created a problem for her due to the pain associated with this type activity."  (Doc. 17 at 9).  While this court's statement of Plaintiff's activities more closely reflects her actual activities, the court does not find the differences to be significant or substantial enough so as to change the outcome of this review.

(Doc. 11 at 7; *see also* R. 53). The Commissioner responds that the VE did not did not testify that the ALJ should find Plaintiff's subjective complaints to be credible. Additionally, the Commissioner correctly notes that any such testimony would be outside the VE's area of expertise. (Doc. 15 at 13 (citing Hearings, Appeals, and Litigation Law Manual, I-2-6-74)[7]).

Plaintiff's citation to the VE's testimony is misplaced. It is a response to a hypothetical question that took into account allegations the ALJ ultimately found unsupported. The ALJ is not required to accept such testimony or rely on it in assessing whether the record supported Plaintiff's subjective complaints. *See Wilson*, 284 F.3d at 1227; *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986). In view of the ALJ's findings, the VE's testimony is not dispositive of any relevant issue.

### D.    Other Matters

Plaintiff argues that the ALJ erred in that he did "not even address what jobs Plaintiff could perform." (Doc. 17 at 6). This is incorrect. The ALJ specifically asked the VE at the administrative hearing whether there was work available for Plaintiff if he (the ALJ) found she was at the light level of exertion with the

---

[7]The manual provides, "The ALJ will not permit a VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise. For example, the VE may not provide testimony regarding the claimant's [RFC] or the resolution of ultimate issues of fact or law." (*Id.*)

limitations he ultimately determined to be applicable. (R. 52-53). The VE testified that jobs were available, and they included bakery worker, cashier, and control area checker. (*Id*.) After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs available for Plaintiff in the national economy consistent with the VE's testimony. (R. 22-23).

Plaintiff also argues that the Commissioner appears to ignore her complaint that her shoulder still bothers her when she moves her arm down from an elevated position. (Doc. 17 at 4 (citing R. 14-15)). The court disagrees. The ALJ accounted for this limitation, among others, when he limited her to light work with "no overhead reaching or lifting, and no more than occasional reaching in all directions." (R. 21).

Plaintiff also argues that the Commissioner failed to note that at the time of the administrative hearing she was a "49-year-old female, who was extremely overweight and should have not been expected to perform ... tasks as a well-conditioned athlete." (Doc. 17 at 5). In support of this argument, she cites Dr. Iyer's examination, which, according to counsel, shows that "Plaintiff had decreased strength in her lower extremities and that Plaintiff was very limited with her right hand and that she could not place her right hand in certain positions." (*Id*. at 5-6 (citing R. 15)).

Dr. Iyer stated, in part, the following concerning Plaintiff's condition as of April 2013: (1) her shoulder still hurts and she cannot raise her right shoulder; (2) she cannot place her "right hand behind her head and lower back"; (3) she has normal grip strength and muscle power of the upper extremities; (4) she has full range of motion in her knees; and (5) she is obese. (R. 469-72). Concerning this evidence, the ALJ stated:

> The undersigned affords great weight to the objective findings of Dr. Iyer and his opinion that the claimant would have impairment of activities involving standing, walking, climbing, squatting, overhead activities, pushing, and pulling because these findings are consistent with the great weight of the record (Exhibit B6F). The undersigned notes that these findings are consistent with the above-articulated residual functional capacity.

(R. 22).

The court finds this claim to be without merit for a number of reasons. First, the ALJ did note Plaintiff's age in his decision. (*See* R. 22 (noting Plaintiff "was 49 years old, which is defined as an individual closely approaching advanced age"). Second, he considered her obesity "in terms of its possible effects on [her] ability to work." (R. 21). Third, nothing in the ALJ's opinion suggests that he expected Plaintiff to perform at any inappropriate level. To the contrary, in assessing Plaintiff's RFC, he considered all her maladies and physical abilities, which led to numerous limitations being imposed with regard to her performance

of light work. (*See* R. 18).

In sum, this court cannot find that the decision of the ALJ is not supported by substantial evidence. It is due to be affirmed. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the case is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 26th day of January, 2018.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge